## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHLOMO BENHAIM,<br><br>                          **Plaintiff,**<br><br>**v.**<br><br>**BOROUGH OF HIGHLAND PARK, HIGHLAND PARK POLICE DEPARTMENT, PATROLMAN DAVID SODEN, AND JOHN DOES 1-5**<br><br>                          **Defendants.** | Civ. No. 11-cv-2502 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This action arises from a physical altercation between the plaintiff, Shlomo Benhaim, and defendant David Soden, a patrolman in the Highland Park Police Department. Benhaim was convicted in state court of assaulting a police officer, resisting arrest, and obstruction of justice. Thereafter, Benhaim filed this action against Soden and the Borough of Highland Park ("Highland Park").[1] In his Complaint, Benhaim asserts a Section 1983 claim for excessive force and a state law claim for assault and battery. He also asserts against Highland Park a *Monell* claim for unlawful customs and inadequate training. Presently before the Court are motions for summary judgment filed by Soden and Highland Park. For the reasons set forth below, defendant Soden's motion is denied and defendant Highland Park's motion is granted.

---

[1]     By consent, the complaint was dismissed as against the Highland Park Police Department. (Dkt. No. 16) The grounds are not stated, but in general a New Jersey police department is not a separate entity, but a department of the municipality.

## I.    BACKGROUND

<u>The Altercation</u>

On May 3, 2009, Benhaim drove his daughter, Talia, to a Rite Aid pharmacy in Highland Park, New Jersey. (Defendant Soden's Statement of Undisputed Material Facts, Dkt. No. 57-3, ¶4). Leaving the Rite Aid, Benhaim accidently backed his car into a light pole in the store's parking lot. (*Id.* ¶7) After determining that the damage to the car and the light pole was negligible, Benhaim drove home. (*Id.* ¶9) Shortly after Benhaim returned home, defendant Soden arrived to investigate a report of the accident that had been filed by a bystander. (*Id.* ¶12) Benhaim did not deny that he may have "tapped" the light pole. (*Id.* ¶13) Benhaim then escorted Soden to his car, which was parked in the rear of his property. (*Id.* ¶14). After inspecting the car, Soden requested Benhaim's license, registration, and proof of insurance. (*Id.* ¶¶14, 17) Benhaim complied, but his insurance card was expired. (*Id.* ¶¶18-19) Soden issued Benhaim a ticket based on the parking lot accident. (*Id.* ¶19)

The parties agree that Benhaim became agitated or upset when he realized he was going to get a ticket. They disagree, however, about what happened next.

Soden states that he smelled alcohol on Benhaim's breath and asked him if he had been drinking. (*Id.* ¶19-21) Benhaim demanded that Soden "get [off] his property," and then, Sodden says, "push[ed] [Soden] in the chest with the palms of both his hands" (*Id.* ¶23) After the push, Soden placed Benhaim under arrest and called for back-up.

According to Benhaim, Soden asked Benhaim if he had been drinking. Sensing Benhaim's growing agitation, Soden began to walk toward the sidewalk. (Plaintiff's Statement of Undisputed Material Facts, Dkt. No. 67-1, ¶15) When Soden told Benhaim that his insurance card was expired, Benhaim started to approach the car so that he could search for an up-to-date version.

2

(*Id.* ¶16). Benhaim states that, as he walked toward the car, Soden "[s]uddenly...[and] forcefully poked/hit [Benhaim] in the upper chest." (*Id.* ¶17) Soden allegedly grabbed Benhaim's left arm and twisted it backward, and then pushed Benhaim forward to the ground. (*Id.* ¶18) Benhaim states that Soden held him down by placing a knee in his back, and handcuffed him. While Benhaim was being handcuffed, Soden allegedly "repeatedly punched him in his back" before finally calling for back-up. (*Id.* ¶¶18-19) Benhaim's daughter, who was watching from inside the house, also recalls seeing Soden "beating on" Benhaim after he had been handcuffed. She reportedly pleaded with Soden "to stop beating her father." (*Id.* ¶¶20-21).

These accounts of the altercation, though divergent, end the same way: Benhaim was arrested and taken to the police station, and later was taken to the hospital to be treated for his injuries. (Dkt. No. 57-3, ¶25) A police internal affairs investigation found no evidence that Soden had used excessive force. (Dkt. No. 67-1, ¶27)

<u>The State Criminal Case</u>

Benhaim was charged with simple assault of a police officer, resisting arrest, obstruction of justice, leaving the scene of an accident, and failing to report an accident. (*Id.* ¶29) On April 22, 2010, after a bench trial in Edison Municipal Court, Benhaim was found guilty of all charges. Benhaim appealed his conviction to the Middlesex County Superior Court, Criminal Division. The Criminal Division reversed his convictions for leaving the scene of an accident and failing to report an accident, but upheld his convictions on the three arrest-related charges. Benhaim appealed to the Superior Court, Appellate Division, which affirmed the Criminal Division's holding.

<u>This Action</u>

On May 2, 2011, Benhaim filed this action against defendants Soden and Highland Park. The Complaint comprises four counts: Count 1 asserts Section 1983 claims against both defendants for false arrest, false imprisonment, and

3

malicious prosecution; Count 2 asserts Section 1983 claims against Soden for use of excessive force; Count 3 asserts a *Monell* claim against Highland Park for unlawful customs and inadequate training; and Count 4 asserts a tort claim against Soden for assault and battery. Benhaim voluntarily dismissed Count 1 pursuant to a Stipulation of Dismissal entered by the Court on December 22, 2011. (Dkt. No. 18) Defendant Soden now moves for summary judgment on Counts 2 and 4, and Defendant Highland Park moves for summary judgment on Count 3.

## II.   JURISDICTION

This Court has jurisdiction over Benhaim's federal-law claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331. It has supplemental jurisdiction over his state-law tort claims pursuant to 28 U.S.C. § 1367.

## III.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.,* 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. In all cases, the ultimate question is "whether a jury could reasonably find either that the

plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not." *Anderson*, 477 U.S. at 254.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial.").

## IV.   ANALYSIS

### A.   Claims Against Defendant Soden

#### 1.   *Heck* does not bar Benhaim's claims against Soden

Against Soden, Benhaim asserts a Section 1983 claim for excessive force and a state law claim for assault and battery. Soden argues that these claims are barred by the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1984). In *Heck*, the Court held that a plaintiff may not maintain an action for damages under Section 1983 if a judgment in the plaintiff's favor would impugn the validity of a prior conviction, unless that conviction has been reversed on direct appeal or impaired in collateral proceedings. *Id.* at 487. To maintain a Section 1983 action, then, plaintiff must establish that the success of his action does not require the invalidation of an outstanding criminal judgment. *Id.* In Soden's view, Benhaim cannot maintain his excessive force and assault claims, because their success implies the invalidity of Benhaim's state criminal conviction for simple assault on a police officer, resisting arrest, and obstruction of justice.

Third Circuit authority is inconvenient, if not categorically adverse. *Garrison v. Porch*, 376 F. App'x 274, 278 (3d Cir. 2010), for example, held that

5

the mere fact of a prior assault conviction did not bar a Section 1983 claim for excessive force arising out of the same incident. The plaintiff in *Garrison* admitted that he assaulted the officer, but alleged that the officer thereafter used excessive force to subdue and arrest him. Because there was "no logical inconsistency" between the plaintiff's initial assault and the defendant officer's subsequent use of excessive force, *Heck* did not bar the plaintiff's excessive force claim. *Id.* at 278-79. "The fact that [the plaintiff's] threatened or attempted use of force was unlawful does not automatically mean that there is no use of force that [the defendant officer] could have used in response which could have risen to the level of unreasonable and excessive." *Id.* at 278.

The *Garrison* analysis accords with that of other, precedential Third Circuit cases. *Lora-Pena v. F.B.I.*, 529 F.3d 503, 506 (3d Cir. 2008), held that the plaintiff's "convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his unlawful actions." In *Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997), the Third Circuit rejected the argument that plaintiff's conviction for resisting arrest barred his excessive force claim because "it is possible for a finding that [the plaintiff] was resisting arrest to coexist with a finding that the police used excessive force to subdue him." District courts, too have repeatedly held that an assault conviction does not in itself preclude an excessive force claim. *See, e.g., Day v. Jackson Twp.*, 2013 WL 394151, at *8 (D.N.J. Jan. 30, 2013) (citing *Garrison* in holding that "an unfavorable termination of a[n]...assault on an officer is not necessarily a *Heck* bar to a plaintiff's § 1983 claim alleging excessive force"); *Weber v. Rodriguez*, 2011 WL 2555358, at *4 (D.N.J. June 27, 2011) (denying summary judgment and holding that "[b]ecause Plaintiff's conviction in state court [for resisting arrest and aggravated assault] is not inconsistent with a finding that [d]efendants used excessive force to arrest him, *Heck* does not bar Plaintiff's § 1983 claim [for excessive force]"); *Woodley v. Al-Ayoubi*, 2011 WL 4594204, at *6 (D.N.J. Sept. 2, 2011) (noting that a conviction for resisting arrest is "not

6

inconsistent with a finding that Defendants used excessive force to arrest [the plaintiff]" and upholding the plaintiff's § 1983 claim for excessive force); *Porter v. Dooley,* 2011 WL 4007690, at *3 (D.N.J. Sept. 6, 2011) (denying defendant's motion for summary judgment in which it was argued that, based on the plaintiff's guilty plea to resisting arrest, *Heck* barred his § 1983 claim alleging excessive force).

Soden relies primarily on *Grande v. Keansburg Borough,* 2013 WL 2933794 (D.N.J. June 13, 2013) (Pisano, J.). There, the Court held that where a plaintiff has been convicted in New Jersey of aggravated assault on a police officer, *Heck* may bar a subsequent excessive-force claim. *Id.* at *5. The court first observed that under New Jersey law, aggravated assault on a police officer requires that "(1) the defendant attempted to cause bodily injury to a law enforcement officer acting in performance of his duties while in uniform or exhibiting evidence of his authority; and (2) the defendant knew that the victim was a law enforcement officer acting in performance of his duties, while in uniform or exhibiting evidence of his authority." *Id.* at *4. Self-defense may be a defense to the charge in the context of "fighting back during an arrest," but only if the "person arrested uses no greater force than that employed by the officer." *Id.* It therefore followed, the Court said, that an assault conviction is "fatally at odds" with a claim that the officer used excessive force because, to be found guilty, the criminal defendant (now plaintiff) must have used an amount of force greater than that used by the arresting officer. *Id.*

*Grande,* however, explicitly states that *Heck* does not apply in certain factual circumstances—for example, where an arresting officer applied unnecessary force *after* the plaintiff had already been subdued and no longer represented a threat. *Id.* at *5. Here, Benhaim is alleging that Soden used excessive force both before and after he was handcuffed. *See Robinson v. Andrews,* 2014 WL 4662237 at *7 (D.N.J. Sept. 18, 2014) (citing *Grande* to deny summary judgment on the basis of *Heck* where the plaintiff's excessive

7

force claim was based on the defendant officer's use of force after arrest). Even under *Grande,* then, a claim has been made out.

Soden attempts to distinguish *Garrison, Lora-Pena,* and *Nelson, supra,* on factual grounds. In Benhaim's criminal trial, he says, the court specifically found Soden's version of events to be more credible. The state court, however, was not called upon to determine whether the degree of force Soden used to effectuate Benhaim's arrest was excessive, whether in itself or in comparison to Benhaim's use of force. There is a good reason for this. Benhaim did not claim that Soden's excessive use of force justified his own, and Benhaim did not plead self-defense. Rather, Benhaim denied that he ever laid a hand on Soden. (*See* Dkt. No. 58, at 105) *Grande's* analysis, which rested on the comparative analysis of levels of force in the context of self-defense, has limited, if any, relevance. *See Grande,* 2013 WL 2933784, at *5.

I conclude that a prior assault conviction does not *per se* bar a subsequent Section 1983 suit for excessive force. The state court's finding that Benhaim was guilty of assault does not necessarily imply that Soden used only lawful force at all points in their interaction. Therefore, *Heck* does not bar Benhaim's claims against Soden.

## 2. The Rooker-Feldman Doctrine Does Not Bar Benhaim's Claims

Soden next argues that Benhaim's claims are barred by the *Rooker-Felman* doctrine. Under that abstention doctrine, lower federal courts cannot entertain federal claims that were previously adjudicated in state court or are inextricably intertwined with a state court decision. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923); *Guarino v. Larsen,* 11 F.3d 1151, 1156–57 (3d Cir.1993); *Port Auth. Police Benev. Ass'n v. Port Auth.,* 973 F.2d 169, 178 (3d Cir.1992). A federal claim is inextricably intertwined with a prior state court decision if "granting the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state

court's ruling." *FOCUS v. Allegheny County Court of Common Pleas.*, 75 F.3d 834, 839-40 (3d Cir. 1996).

Soden's argument here is essentially identical to his argument in support of the *Heck* bar. For the reasons stated above, the *Rooker-Feldman* doctrine is inapplicable. Benhaim asserted no constitutional claims at his criminal trial and did not put the degree of force used by Soden in issue. The state court cannot be said to have adjudicated Benhaim's excessive force claim. Nor is the excessive force claim inextricably intertwined with Benhaim's criminal conviction. A judgment that Soden used excessive force at some point is not fatally in conflict with the state court's finding that Benhaim committed an assault at some point.

Soden's motion for summary judgment is therefore denied.

## B. Benhaim's Claims Against Highland Park

Benhaim alleges a *Monell* liability claim against Highland Park for unlawful practices and inadequate training. Highland Park argues that I should grant summary judgment on this claim because, first, it is barred by the *Heck* and *Rooker-Feldman* doctrines, and, second, the evidence in the record fails to show that Highland Park's customs or failure to train its police officers proximately caused the alleged violation of Benhaim's constitutional rights.

### 1. The *Heck* and *Rooker-Feldman* Doctrines Are Inapplicable

Highland Park argues that to the extent that the Benhaim's excessive force claim against Soden must be dismissed pursuant to the *Heck* and *Rooker-Feldman* doctrines, his *Monell* claim should likewise be dismissed. As I held above, however, the *Heck* and *Rooker-Feldman* doctrines do not bar Benhaim's excessive force claim. Highland Park's motion, to the extent it rests on Benhaim's invocation of the *Heck* and *Rooker-Feldman* doctrines, is denied.

### 2. *Monell* Liability

Highland Park next argues that Benhaim has failed to present any evidence showing that his constitutional injury was caused by either Highland Park's customs or its failure to train its police officers.

It is well established that municipal liability under Section 1983 "may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990) (citing *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658 (1978)). As a consequence, a municipality may be liable under Section 1983 only where the constitutional injury is alleged to have been caused by a municipal "policy" or "custom". *See Monell,* 436 U.S. at 694. A municipal policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotations omitted). A municipal custom may be shown where a course of conduct, though not authorized by law, is "so permanent and well-settled as to virtually constitute law." *Id.* One such custom is "deliberate indifference" toward the class of persons who might suffer a constitutional injury as a result of the conduct in question. *Simmons v. city of Philadelphia,* 947 F.2d 1042, 1070 (3d Cir. 1991). Inadequate police training may serve as the basis for municipal liability under Section 1983, but only where the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989). The deliberate indifference standard is a demanding one, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* 131 S.Ct. 1350, 1360 (2011).

### a. Unlawful Customs

Benhaim alleges that the Highland Park Police Department acted with deliberate indifference when it hired defendant Soden with the knowledge that, in his previous position as an officer for the New Jersey Transit Police Department ("NJTPD"), he had been cited for failing to follow appropriate departmental policies. The citation arose from a traffic stop that Soden made on February 11, 2007. The driver of the car filed an internal complaint against Soden, and sued him and the NJTPD for unlawful discrimination. The suit was voluntarily dismissed with prejudice.[2] However, the internal affairs unit of the NJTPD found that Soden had failed to follow the department's policy regarding radio communications. (*See* Dkt. No. 67-2, at 36, 67)

Benhaim relies primarily on *Beck v. City of Pittsburgh*, 98 F.3d 966 (3d Cir. 1996) in arguing that Highland Park, because it knew about this incident when it hired Soden, acted with deliberate indifference toward individuals against whom Soden might use excessive force. In *Beck*, five excessive force complaints filed against a single officer in a five-year period permitted a jury to conclude that the municipality should have known of the officer's violent tendencies. *Beck*, 98 F.3d at 972-73 (emphasizing the similarity and temporal proximity of the five complaints against the officer in finding that the municipal defendant knew or should have known of the officer's propensity for violence). The prior complaint against Soden, however, did not involve the use of excessive force. (*See* Dkt. No. 67, at 18)  Highland Park's knowledge of the prior complaint does not therefore support a reasonable inference that it was on notice that Soden was prone to use excessive force.

Benhaim also asserts that the police department's internal review procedures were insufficient to ensure that excessive force complaints would receive meaningful review. An expert witness, Dr. Edward Maguire, identifies several alleged procedural deficiencies and concludes that the department's

---

[2] *See El Bey v. New Jersey Transit Corporation et al.* (3:07-cv-03287 at Dkt. No. 13)

review was unfairly biased toward Soden. (*See* Dkt. No. 67, at 18-20) Benhaim alleges that these procedural deficiencies constituted a municipal custom or practice that contributed to his injury.

Benhaim cites *Day v. Jackson Tp.*, 2013 WL 394151, at *11 (D.N.J. Jan. 30, 2013), in which the court denied summary judgment on a *Monell* claim, finding that a jury could find that "allegedly lackadaisical internal affairs investigations related to excessive force" caused the plaintiffs' injury. In *Day,* the plaintiffs alleged that in a five-year period, the police department investigated 15 excessive force complaints, none of which resulted in disciplinary action. *Id.* at *2. The plaintiffs also alleged that three of the four defendant officers had previously been investigated for excessive use of force but exonerated. *Day* held that plaintiff had made out a case that the department's deficient internal investigation procedures had created a culture of impunity. *Id.* at *11. The court identified two specific procedural defects: the department's failure to interview all of the parties to an excessive force complaint, as required by the New Jersey Attorney General Guidelines ("AG Guidelines"), and the failure to track complaints lodged against individual officers for use in subsequent investigations. *Id.* at *10.

Here, the causal link between the suspect custom and the injury to Benhaim is "too tenuous" to withstand summary judgment. *See Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990) ("As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury.") There is no evidence here, as in *Day*, of a pattern of exonerations. There is no substantial indication that the Highland Park Police Department had a practice of failing to seriously investigate the alleged use of excessive force. The officer investigating Soden (unlike the police department in *Day*) complied with the AG Guidelines and interviewed all parties to Benhaim's complaint. There is no allegation that Highland Park fails to record or monitor complaints against its police officers. In sum, then, Benhaim has not shown evidence of the kind of procedural

shortcomings relied on in *Day* to substantiate the plaintiffs' unlawful custom claim.[3]

Highland Park's motion for summary judgment on Benhaim's unlawful custom claims is therefore granted.

### b. Failure to Train

Benhaim also argues that Highland Park is liable under Section 1983 because it failed to train its police officers to "de-escalate" conflicts and to interact appropriately with citizens who suffer from diabetes. Again relying on the opinion of his expert, Dr. Maguire, Benhaim asserts that these gaps in training made his confrontation with Soden inevitable, and that they evince Highland Park's "deliberate indifference to highly predictable consequences." (Dkt. No. 67, at 25)

To establish a claim of municipal liability, the plaintiff must show that the deficient training of officers is closely related to the injury he ultimately suffered. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). The focus of this inquiry "must be on the adequacy of the training program in relation to the

---

[3]    Many of the purported defects identified by Dr. Maguire are really conclusory statements expressing a disagreement with the outcome of the investigation:

- "[I]t would have been appropriate for the department to conduct a 'thorough and neutral review.'" (Dkt. No. 67 at 18)
- "There is no evidence…to suggest that Officer Soden's supervisor's conducted a thorough review." (*Id.* at 19);
- "[S]ome of the internal affairs questions 'do not appear neutral and may be biased in favor of Officer Soden." (*Id.*)

Other alleged procedural defects are too minor to establish an unconstitutional custom or practice. For example, Benhaim states that two use of force reports in the internal affairs files did not contain a narrative of the incident. (*See* Dkt. No. 67, at 18-19). That is literally true, but the arrest report (Dkt. No. 67-2, at 96-99) and Soden's official statement to the investigators (*Id.* at 89-92)—both of which were also included in the internal affairs file—contain a detailed narrative of the altercation with Benhaim. Benhaim, without citing any specific example, also states that it is "not clear" that reports were reviewed or signed by supervisors. (Dkt. No. 67, at 19) It is clear, however, that a supervisor signed, *e.g.*, the internal affairs notice form initiating the investigation (Dkt. No. 67-2, at 93), the final investigation report (*Id.* at 74-75), and several documents created in the course of the investigation.

tasks the particular officers must perform." *Id.* at 390. Thus the flaw must be in the training program itself; isolated errors in its execution will not suffice. Liability will not arise merely because an otherwise acceptable training program has been negligently administered. *Id.* at 391. Nor will liability arise on the tautological grounds that the injury in question would not have occurred if officers had been trained to avoid that particular injury; such a claim "could be made about almost any encounter resulting in injury." *Id.* at 391. Additionally, the plaintiff must show that the failure to train "reflects a deliberate or conscious choice" by the municipality. *Id.* at 389. In short, the plaintiff's task is two-fold: he must show that the training program was insufficient, and that the insufficiency resulted from an intentional decision by the municipality.

No evidence of record tends to establish that any training deficiency is causally connected to Soden's actions. Benhaim offers only his expert's conclusory statements that, without training in "de-escalation," Highland Park's police officers are ill-equipped for their jobs. *See id.* at 390. The only examples of de-escalation listed in Dr. Maguire's report are vaguely worded: (i) "slowing the pace of the encounter," (ii) "using verbal and nonverbal strategies to reduce...the level of agitation," and (iii) "calling a supervisor to the scene." (Dkt. No. 59-2, at 64) Benhaim has produced no evidence to show that the actual training of Highland Park police officers lacks these features. Indeed, Dr. Maguire's report concedes that, at one point, "Soden walked toward the sidewalk...[and] de-escalate[d] the situation." (*Id.*) The report faults Soden for not attempting further de-escalation, but there is no evidence that this error—assuming it was an error—resulted from deficient training, as opposed to an on-the-spot misjudgment.

There is also no evidence showing that Highland Park's failure to train its officers to recognize the symptoms of diabetes was closely related to Benhaim's injury. Benhaim states that an insulin deficiency causes chemical reactions in the body which in turn may cause a breath odor that can be mistaken for

14

alcohol. By not training its officers to appreciate this effect of diabetes, Benhaim contends, Highland Park heightened the risk that an officer would mistakenly conclude that force was needed to subdue a person perceived as intoxicated. Even in Benhaim's telling of the incident, however, it was his own emotional agitation that proximately caused Soden's use of force. Soden's routine query as to whether Benhaim had consumed alcohol does not establish the requisite causal connection. The alleged deficiency in training is too far removed from Benhaim's ultimate injury to permit a conclusion that, but for the failure to inform officers about the symptoms of diabetes, the injury would have been avoided. *See City of Canton*, 489 U.S. at 391 ("Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?")

Finally, Benhaim has produced no evidence showing that these alleged training deficiencies were the result of a deliberate choice made by Highland Park. That lack, even standing alone, is sufficient to defeat the claim.

Highland Park's motion for summary judgment is therefore granted as to Benhaim's failure-to-train claim.

## V.    CONCLUSION

For the reasons stated above, defendant Soden's motion for summary judgment is **DENIED**, and defendant Highland Park's motion for summary judgment is **GRANTED**.

An appropriate Order will issue.

Dated: January 6, 2015

KEVIN MCNULTY
United States District Judge

15